

**THE ATTORNEY GENERAL**

**OF TEXAS**

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

February 13, 1948

Hon. George B. Butler, Chairman
Board of Insurance Commissioners
Austin, Texas

Opinion No. V-502

Re: Whether "Survivorship
Bonus" or "Persistency
Bonus" provisions of
submitted policies vio-
late Article 5053, V.C S.

Dear Mr. Butler:

Your letter of December 19, 1947, inquires as to whether or not "Survivorship Bonus" or "Persistency Bonus" provisions of certain submitted policies violate that portion of Article 5053, V.C.S., which reads as follows:

". . .; nor shall any such company issue any policy containing any special or board contract or similar provision, by the terms of which said policy will share or participate in any special fund derived from a tax or a charge against any portion of the premium on any other policy.
. . ."

Your letter reads in part as follows:

"This Department has been split in its views. I am submitting to you a brief to me by Will G. Knox, Legal Examiner for the Department, who believes that these policies are inconsistent with Article 5053. It has, however, been my position, as Life Insurance Commissioner, that such 'Survivorship Bonus' or 'Persistency Bonus' provisions are not inconsistent with the language of the above statute and this Department has uniformly approved each and every policy containing such provisions presented to it since the writer took office, so long as such policy did not provide for the payment of the bonus out of premium income or other policies.

"All of the enclosed policies have been approved by this Department and are now being issued in Texas. We are informed by the companies writing these policies that several millions of dollars of this insurance has been written and is now in force on the lives of Texas people, and that they have created agency organizations to write the policy in Texas. Agents have moved into new territories solely in order to write these policies in many cases.

"You will note that none of the policies enclosed herewith contain any provision by the terms of which the bonus will be paid by a tax or charge against any portion of the premium on any other policy, as prohibited by the Statute. We believe that the statutory inhibition is against the policy itself containing the provisions prohibited.

"An examination of the Statutory language above quoted makes it apparent, the writer thinks, that the creation of a special fund is prohibited only when derived in the prohibited manner, viz, 'from a tax or a charge against any portion of the premium on any other policy.'

"These companies contend that they are providing the necessary funds to take care of the 'Bonus' provisions other than from premium income. A check of the books of some of the companies verifies that they actually take these moneys from the surplus funds of the company. The writer does not believe that the Insurance Department has any control over the surplus of a company, no more than a Federal Communications Commission would have control over a utility. In other words, surplus is that amount earned by the corporation and it is moneys no longer belonging to the subscribers of a utility or the policyholders of an insurance company unless the insurance company is mutualized. In none of these instances is the company mutualized.

"The principal objection that has been made to this policy is that it affords too much room for misrepresentation of the policy by the agents. We consider that to be an agency matter to be handled by the Agency Licensing Division of this Department, rather than to go to the legality of the policy. . ."

Hon. George B. Butler, Page 3 (V-502)

An illustration of the type of provision inquired about appears in a submitted form of policy issued by the National Old Line Insurance Company of Little Rock, Arkansas.

On the front page of this policy is the following:

"Survivorship Bonus

"In the event the insured be living and if this policy be in force other than by reason of the operation of one of the non-forfeiture values provisions on the twentieth anniversary of the date hereof, the Company will pay the Survivorship Bonus provided under 'Survivorship Bonus,' paragraph 1, page 4 hereof."

Paragraph 1, on page 4, is as follows:

"1. Survivorship Bonus

"Upon payment of each full years premium, after the first and to and including the twentieth, on account of each and every policy issued in the same calendar year as this policy and containing a provision entitled 'Survivorship Bonus,' the Company will place in a fund $5.00 for each $1000 of the sum insured of such policy, provided that 'sum insured' as here used shall mean the ultimate sum insured in child's policies having a graduated sum insured. At the end of each calendar year, the fund shall be credited with interest at 3% on the amount in the fund at the beginning of the year. No deduction shall be made from the fund for any purpose whatsoever, other than for payments, if any, required by law, as by way of taxes or otherwise.

"If the insured be living and if this policy be in force, other than by reason of the operation of one of the non-forfeiture values provisions, on the twentieth anniversary of the date hereof, this policy will have qualified for a Survivorship Bonus payable to the then life owner, and the Company will determine the amount of such bonus upon the expiration of the then calendar year. The Survivorship Bonus shall be an amount of money bearing the same proportion to the whole of the fund at the end of such calendar year, as the sum insured under this policy bears to the total sum insured under all policies that shall have qualified for a Survivorship Bonus in the same calendar year.

"The whole or any part of the Survivorship
Bonus may be used to purchase additional paid-up
life insurance on the life of the insured hereunder
at the net single premium rate for the then attain-
ed age of the insured according to the American Ex-
perience Table of Mortality with interest at 3% per
annum upon the proper application made therefor
accompanied by evidence of insurability, at stand-
ard rates, satisfactory to the Company received at
its Home Office during the lifetime of the insured
and within the thirty days after the date of mailing
of notice of the amount of such Survivorship Bonus,
otherwise the Survivorship Bonus will be paid in
cash immediately upon the expiration of such thir-
ty day period."

The crux of the question lies in the determination of
whether or not the special fund which is provided for is "derived from
a tax or a charge against any portion of the premium on any other pol-
icy." The emphasis here, as we see it, is on the question of whether
premium income from any other policy goes into this special fund. If
so, this type of policy is prohibited by Article 5053. See opinions of
the Attorney General dated May 23, 1913, and July 10, 1913, addressed
to Hon. B. L. Gill, Commissioner of Insurance and Banking by Hon.
C. M. Cureton, First Assistant Attorney General. If not, the policy
is not prohibited, as there is no statutory prohibition against a policy
participating in a special fund derived solely from sources other than
premiums collected on other policies.

We do not think that the fact that contributions are made
from the surplus to the special fund necessarily determines the ques-
tion. It is necessary to go further to determine whether the surplus
referred to is made up of any portion of the premiums collected from
other policies. If an insurance company is prohibited from using "any
portion of the premium on any other policy" to create a special fund
for the benefit of new policies that it issues, as we think it is by Arti-
cle 5053, the mere fact that part of the premiums are denominated
"surplus" on the books of the company would not make the statute in-
applicable. See Articles 4753 and 5036, V.C.S. To hold otherwise
would be permitting such companies to do indirectly what they are
prohibited from doing directly.

That part of Article 5053, above quoted, is limited to
premium income and has no application to monies received by a capi-
tal stock insurance company from other sources. It is only in so far
as premiums are used to create a special fund for such purpose, that
Article 5053 applies. If premium payments are not commingled with
other revenue or monies derived from other sources, Article 5053
would not prohibit an insurance contract calling for stated contribu-

tions from the fund containing monies derived from such sources other than premium payments.

The insurance contracts submitted to us do not specify where the money for the special fund comes from. They do not on their face contain any terms by which the policies will share or participate in funds derived from a tax or charge against a portion of the premiums collected on other policies. However, the broad wording of the policies could be interpreted as allowing the policy to participate in a special fund made up partly of premiums from other policies, such contributions having a fixed relation to the face and therefore to the premiums on this and other similar policies. The policies create enough uncertainty to require that you examine the method of accumulating the special fund to be certain that it does not follow the practice intended to be prohibited by Article 5053. You state in your request that a check of the books of some of these companies "verifies that they actually take these monies from the surplus funds of the company." If you mean by this that the money is taken from a fund which is not made up in any part by premiums paid on other policies, then such procedure is entirely lawful.

If you find that the practice under any of these policies is to include any portion of premium payments in the special fund, to bring such practice within the spirit and terms of Article 5053, you should require future contributions to the special fund to be made from revenues other than premium payments and from a fund which is not commingled with premium payments. Before approving this form of policy for future years, you may want to consider the desirability of the face of the policy clearly stating that such contributions are to be made from the permitted sources rather than from other premiums.

## SUMMARY

Provision in insurance policies creating a "Survivorship Bonus" or "Persistency Bonus" fund by contributions having a fixed relation to the face value of the policy and therefore to the premium paid and from a fund made up in whole or in part of premium payments on other policies, violates Article 5053, V.C.S. Such provision does not violate Article 5053 if it requires the special fund to be made wholly of contributions from sources other than premium payments. The policies submitted do not state the source of the special fund contributions. Therefore, the Insurance Commissioner is

authorized to examine the actual practice under such policies and require special fund contributions to be made from company revenues and sources other than premium payments on other policies.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Fagan Dickson*
Fagan Dickson
First Assistant

FD/JCP

APPROVED:

*Price Daniel*
ATTORNEY GENERAL